IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAMOND DEAN,                              §
(TDCJ # 2058851),                         §
                                          §
              Petitioner,                 §
                                          §
V.                                        §          No. 3:18-cv-2623-G-BN
                                          §
LORIE DAVIS, Director                     §
Texas Department                          §
Correctional Institutions Division,       §
                                          §
              Respondent.                 §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Damond Dean, a Texas inmate, filed a *pro se* application for writ of
habeas corpus under 28 U.S.C. § 2254, in which he also requests an evidentiary
hearing. *See* Dkt. No. 3. This resulting action has been referred to the undersigned
United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and
a standing order of reference from Senior United States District Judge A. Joe Fish. The
State filed a response opposing relief, *see* Dkt. No. 16, to which Dean filed a reply, *see*
Dkt. No. 20. For the reasons explained below, the Court should deny Dean's federal
habeas petition and his motion for an evidentiary hearing.

**Applicable Background**

A jury found Dean guilty of sexual assault of a child. *See State of Texas v.
Damond Dean*, No. F1575244 (3rd Crim. Dist. Ct. Dallas County, Tex., 2016); Dkt. No.
17-33 at 15. The trial court found two enhancement paragraphs to be true and

1

sentenced Dean to forty years of imprisonment. *See id*. On April 4, 2017, the Fifth District Court of Appeals affirmed the judgment. *See Dean v. State*, No. 05-16-00168-CR (Tex. App. – Dallas, 2016, no pet.); Dkt. No. 17-3. Dean did not file a petition for discretionary review. *See* Dkt. No. 3 at 3.

Dean filed an application for state writ of habeas corpus claiming actual innocence, constitutionally ineffective assistance of trial counsel on numerous grounds, trial court error by admitting evidence into trial without giving fair notice, and prosecutorial misconduct. *See* Dkt. No. 17-33 at 20-39. On June 6, 2018, the CCA denied Dean's application without a written order. *See* Dkt. No. 17-27.

In his timely-filed federal habeas application, Dean raises the following grounds for relief:

(1) Ineffective assistance of counsel by:

    a. failing to investigate/prepare for trial;

    b. failing to call witnesses;

    c. failing to object to witness testimony; and

    d. failing to make an opening statement;

(2) The trial court violated his due process rights by admitting evidence of jail calls without giving him fair notice;

(3) The prosecutor committed misconduct by introducing false and misleading testimony; and

(4) He is actually innocent.

*See* Dkt. No. 3 at 6-10; Dkt. No. 13.

## Legal Standards and Analysis

### I. Claims

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g., Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly

established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102 (internal quotation marks omitted); *see Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule

application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id*. Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the

Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Richter*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a

state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *cf. Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

That is, a Section 2254 petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

### A.    Ineffective Assistance of Counsel

Dean makes numerous claims of ineffective assistance of trial counsel. The Court reviews claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner must

demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See id.* at 687-88. A petitioner must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. ____, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746,

752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does

not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in

10

tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a de novo review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ____, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

### 1.    Failure to investigate or call witnesses

Dean argues that his trial counsel "failed to investigate and adequately prepare for trial," Dkt. No. 3 at 9, and failed to call "material witnesses," Dkt. No. 13 at 5.

A petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Trevino v. Davis*, 829 F.3d 328, 338 (5th Cir.

2016) (internal quotations omitted). And complaints of uncalled witness are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because assertions about what a witness would have stated are speculative. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prevail on such a claim, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the proposed testimony of the witness, and show that the testimony would have been favorable to a particular defense. *See id.*

Here, regarding his allegation that his counsel was unprepared, Dean relies on an exchange between his counsel and the trial court at a pretrial hearing in which the trial court admonished counsel for requesting a continuance due to the inability to procure a defense witness. *See* Dkt. No. 3 at 9; Dkt. No. 13 at 2-4. But the exchange between counsel and the court, which took place on December 14, 2015, *see* Dkt. No. 17-16, does not demonstrate that counsel failed to investigate or was unprepared for trial, which began on February 8, 2016, *see* Dkt. No. 17-17. Dean fails to show how the trial court's grant of counsel's request for a continuance altered the outcome of the trial. *See Trevino,* 829 F.3d at 338.

Dean also offers further general speculations regarding what he believes his attorney would have discovered through further investigation. For example, he avers that, had his counsel properly investigated the case, he would have discovered the following: the victim was bisexual, engaged in orgies, lied to get what she wanted, did

not like to follow rules at her school, did not like Dean, wanted her mother and father to reunite, and made an outcry about the assault on the day of the assault. *See* Dkt. No. 13 at 7-10. Much of this information was in fact brought out at trial. *See* Dkt. No. 17-19 at 70-71 (testimony of victim acting out at school), at 65 (victim wanted her mother and father to reunite); Dkt. No. 17-18 at 196 (testimony that victim told mother of the assault on the day of the assault). And Dean fails to show how any of this evidence would have altered the outcome of the trial and instead states only that "this alleged sexual assault never happened." Dkt. No. 13 at 8. His general speculations are insufficient. *See Trevino,* 829 F.3d at 338.

And the exhibits from his state habeas petition that Dean cites in support of this argument are of no benefit. The affidavit of Cassandra Taylor, a substitute teacher, describes the victim as "disruptive," and "talkative" in class, and generally a poor student. Dkt. No. 17-35 at 5. The affidavit of Kelvis Mims states that, in 2013, he and the victim would have sex, that she "does a lot of lying," and that she lied about him getting her pregnant. *Id.* at 35. Mims also stated that the victim is bisexual and that they would occasionally "have threesomes." *Id.* Finally, Dean cites to text messages purportedly from Cassandra Taylor to Dean's counsel, expressing an interest in speaking with counsel's investigator. *See id.* at 52-54. These texts provide no support for Dean's argument, as they do not demonstrate whether his counsel ultimately did or did not contact Taylor. *See id.* Also, in Taylor's affidavit, she acknowledges that she was contacted by the investigator, though she does not provide a date. *See id.* at 5.

As to Dean's claim of uncalled witnesses, he appears to allege that his counsel provided ineffective assistance by failing to also call as witnesses Mims, and Taylor. *See* Dkt. No. 13 at 7.

A petitioner who alleges ineffective assistance of counsel for failing to call a witness must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). While Dean cites to the affidavits of Mims and Taylor, submitted with his state habeas application, *see* Dkt. No. 13 at 7, he does not show that either Mims or Taylor were available to testify, or would have done so, *see id.* at 5-7; Dkt. No. 17-35 at 5-6, 35-36. This is insufficient to demonstrate counsel provided ineffective assistance. *See Day*, 566 F.3d at 538.

### 2. Failure to object

Dean avers that his counsel provided ineffective assistance by failing to object to the victim's therapist's testimony, when she stated that "I would say most of the time if not the majority of the time that children come into our center, it is very rare that we see a child come in that is lying." Dkt. No. 3 at 9 (citing Dkt. No. 17-19 at 125-26). Dean argues that his counsel should have objected because "an expert who testifies that a class of persons to which the victim belongs is truthful is essentially telling the jury that they can believe the victim's testimony." Dkt. No. 3 at 9-10. But Dean fails to demonstrate or even allege prejudice. *See id*. And Dean's counsel cured any possible

harm by eliciting from the therapist testimony that she does not conduct investigations and does not know with certainty whether any victims, including the victim in this case, are telling the truth. *See* Dkt. No. 17-19 at 124-25, 129. Thus, this claim fails. *See Strickland*, 466 U.S. at 694.

Dean also argues that his counsel should have objected to the victim's "hearsay testimony about Kelvis Mims Jr. agreeing to lie about him having impregnated her should her mom call and ask him questions." Dkt. No. 3 at 10 (citing Dkt. 17-18 at 100-101). The United States Court of Appeals for the Fifth Circuit has explained that "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *see also Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness).

The Court first notes that the testimony that Dean cites to is not hearsay testimony under Texas Rules of Evidence. Texas Rule of Evidence 801(d) states: "Hearsay" means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." TEX. R. EVID. 801(d).

At trial, the following exchange took place between the prosecution and the victim:

> A. Yes. After that had happened, I missed periods, my menstruals, and I was going months without having them; and, so, me and my mama established a relationship at that time, a close relationship, and I had told her -- well, at first I called somebody that I used to date. His name was Kelvis

15

Mims. And I told him, I said if my mama calls you, I need you to tell her that we were sexually active. And he said that's fine; I'll tell her that. And when I talked to my mom, I told her that I'm not sure but I might be pregnant because I haven't had a menstrual.

Q. Now, [ ], why did you tell Kelvis what you told him?

A. Because I trusted him and he's been there through a lot, so I told him I need you to say what I tell you to say. I need you to say that me and you were sexually active, even though we weren't together at that time.

Q. Were you and Kelvis sexually active?

A. No, sir. We didn't -- we hadn't seen each other for years at that point, but I knew whenever I texted him or whenever I needed him, he was there.

Q. Why would you create a story like that, in case your mom called?

A. So he would be able to back me up, because I know once I called her to tell her that, she was gonna ask with who. My mother, she's gonna ask who you been sexually active with, why was it unprotected, why did you do it, period. And, so, I needed him to back me up when she asked all those questions.

Q. Why didn't you want to tell your mom the truth?

A. Still ashamed. And I didn't want nobody to know that. I didn't want anybody to know that.

Dkt. No. 17-18 at 100-01. Nothing in this portion of the victim's testimony could be construed as hearsay testimony under Texas law, and any objection by Dean's counsel would have been meritless. Counsel was not ineffective for not objecting. *See Clark*, 19 F.3d at 966.

Further, Dean fails to allege prejudice, other than to contend generally that

16

"there is a reasonable probability that, but for [his counsel's] unprofessional error, that of the proceeding would have been different." Dkt. No. 3 at 10. This general statement fails to "affirmatively prove prejudice," which is fatal to Dean's claim. *See Strickland*, 466 U.S. at 693.

### 3.    Failure to make an opening statement at trial

Dean makes a singular statement, without further argument, that his counsel "made no opening statement to the jury for [his] defense." Dkt. No. 13 at 9. Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition ... [and] mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002) (stating that where a habeas petitioner fails to brief an argument adequately, it is considered waived). Furthermore, this claim also fails because Dean fails to demonstrate any prejudice from his counsel's supposed deficient performance. *Strickland*, 466 U.S. at 693.

And the state habeas court denied Dean's IAC claims when it denied his state habeas application. Because the state habeas court's decision to deny relief did not involve an unreasonable application of *Strickland*, Dean's § 2254 petition should be denied, and Dean fails to show that his counsel's performance was ineffective.

Dean also fails to show that the state-court decision was unreasonable by showing "that there is a reasonable probability that, but for counsel's unprofessional

17

errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Dean fails to show there was no reasonable basis for the state court to deny relief. *See Richter*, 526 U.S. at 98.

### B.    Trial Court Erred in Admitting Evidence

Dean avers that the trial court violated his right to due process by failing to give fair notice prior to admitting evidence of Dean's phone calls from jail. *See* Dkt. No. 3 at 7.

With regard to state court evidentiary rulings, federal courts "do not sit as a super state supreme court to review error under state law." *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). The Due Process clause "does not afford relief where the challenged evidence was not the principal focus at trial and the errors were not so pronounced and persistent that it permeates the entire atmosphere of the trial." *Gonzales v. Thaler*, 643 F.3d 425, 431 (5th Cir. 2011). Federal habeas corpus relief is warranted "only when the trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause.... [T]he erroneous admission of prejudicial evidence justifies federal habeas corpus relief only when it is "material in the sense of a crucial, critical, highly significant factor." *Bailey*, 744 F.2d at 1168. (citations omitted).

Here, Dean argues that the trial court violated his right to due process by admitting evidence of his recorded calls from jail to his son as rebuttal evidence to his

son's prior testimony. *See* Dkt. No. 3 at 7; *see also* Dkt. No. 17-20 at 5-22 (hearing on the admissibility of the jail calls). Dean summarizes the hearing and contends only that "he was harmed by the State's failure to provide him with adequate notice of intent to use the jail calls, thus depriving him of his ability to contest the admissibility of the jail calls, rebut it, or offer evidence or arguments to mitigate it," and that "it would be impossible to find that error in the admission of this evidence did not effect his due process substantial rights." Dkt. No. 3 at 7. In his memorandum in support of his Section 2254 petition, Dean argues that the admission of the calls was a violation of Texas Rule of Evidence 404(b). *See* Dkt. No. 13 at 18. Rule 404(b) concerns the prohibited and permitted uses as well as the notice requirements of "crimes, wrongs, or other acts" to demonstrate character in the prosecution's case-in-chief. TEX. R. EVID. 404(b). The rule does not apply in Dean's case because the prosecution introduced the jail calls to impeach and rebut Dean's son's testimony, not to demonstrate character. *See* Dkt. 17-20 at 10.

Further, the United States Supreme Court has made clear that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Dean has failed to show that the trial court erred, much less that any alleged error was so extreme as to constitute a denial of fundamental fairness under the Due Process Clause. This argument fails. *See Gonzales*, 643 F.3d at 430.

And the state habeas court denied this claim when it denied Dean's state habeas application. Dean fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established federal

law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See Williams*, 529 U.S. at 402-03; *Childress v. Johnson*, 103 F. 3d 1221, l224-25 (5th Cir. 1997). As such, Dean fails to show there was no reasonable basis for the state court to deny relief. *See Richter*, 526 U.S. at 98.

### C.    Prosecutor Presented False/Misleading Testimony

Dean alleges the prosecutor violated his right to due process by "knowingly us[ing] false testimony" at trial Dkt. No. 3 at 7. Specifically, he alleges that, at trial, "the State knew that the testimony of [the victim] regarding her irregular menstrual cycle was false." *Id.* Dean also alleges the State elicited false testimony from Dr. Krystal Castle regarding the cause of the victim's irregular cycles and that the State knew the victim's mother's testimony regarding when she became aware of the sexual assault was false. *See id.*

Prosecutorial misconduct may "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (citation and internal citation omitted). To demonstrate a due process violation in allegations of a prosecutor's use of perjured testimony, a petitioner must prove (1) the testimony in question was actually false, (2) the prosecutor was aware of the perjury, and (3) the testimony was material. *See*

20

*Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

But perjury is not established by mere contradictory testimony from witnesses, inconsistencies within a witness' testimony, and conflicts between reports, written statements, and the trial testimony of prosecution witnesses. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). Rather, it "merely go[es] to the credibility of the witnesses, an area within the province of the jury." *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989).

Dean fails to demonstrate a due process violation. He avers that the victims trial testimony (at Dkt. No. 17-18 at 100-05), regarding the cessation of her menstrual cycle, was meant to demonstrate that the sexual assault "was the sole cause" of the cessation. Dkt. 3 at 7. He argues that, because separate trial testimony demonstrated that the victim had a history of irregular menstrual cycles due to her medications, the victim committed perjury, and the State was aware but did not correct the perjured testimony. *See id.*; Dkt. No. 13 at 12-13.

The victim testified as follows: "After [the sexual assault], I missed periods, my menstruals, and I was going months without having them." Dkt. 17-18 at 100. She further stated that she feared she might be pregnant. *See id.* The victim's testimony relates to the timing of her missed menstrual cycle and does not, as Dean alleges, attempt to demonstrate that he was the "sole cause" of them. And Dean fails to demonstrate how this testimony was material to the case. Therefore, this claim fails. *See Faulder*, 81 F.3d at 519.

Similarly, although Dean asserts that the prosecution knowingly elicited misleading testimony from Dr. Castle regarding the victim's irregular cycles, *see* Dkt. No. 3 at 8, and that the victim's mother falsely testified that she was not aware of the assault for approximately five months, *see id.* at 7, he again fails to show that this allegedly misleading testimony was material to the case, *see id.* at 7-8; Dkt. No. 13 at12-17. With regard to testimony about the victim's cycles, Dean simply alleges that "the State was well aware of [the victim's] relationship with [Kelvis Mims, Jr.], which may have caused her medical and psychological problems." Dkt. No. 13 at 15. And, regarding the victim's mother's testimony, Dean posits that the victim's mother "was told the same night of the alleged assault and that she wanted to call the police but [the victim] told her not to ... because [the victim] knew if they called the police they would [have] taken her to the hospital and run tests and would [have] proved nothing happened." Dkt. No. 13 at 12. Dean provided no support for this theory and has failed to demonstrate how Dr. Castle's or the victim's mother's testimony was material to the case. Thus, the claim can provide no relief. *See Faulder*, 81 F.3d at 519.

And, although Dean attempts to bolster his claim by citing to the testimony of another witness which, he argues, contradicts Dr. Castle's testimony, *see* Dkt. No. 13 at 16, this is insufficient to provide Dean with relief, *see Koch*, 907 F.2d at 531; *Martinez-Mercado*, 888 F.2d at 1492.

Dean appears to also claim that the prosecution elicited false or misleading testimony from Desiree Teague, the victim's counselor, regarding the victim's

truthfulness and that she was suffering from post-traumatic stress disorder. *See* Dkt. No. 13 at 13, 15. Dean has failed to adequately brief the issue, and so the claim fails. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) (stating that conclusory claims are insufficient to entitle a habeas corpus petitioner to relief). Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition ... [and] mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Smallwood*, 73 F.3d at 1351 (quoting *Ross*, 694 F.2d at 1011-12); *see also Lookingbill*, 293 F.3d at 263 (stating that where a habeas petitioner fails to brief an argument adequately, it is considered waived).

Further, Dean raised the claim of false testimony in his state habeas application, *see* Dkt. No. 17-33 at 35, which the CCA denied, *see* Dkt. No. 17-27. And Dean fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See Williams*, 529 U.S. at 402-03; *Childress*, 103 F.3d at 1224-25.

## D.    Actual Innocence

Dean claims he is actually innocent. *See* Dkt. No. 3 at 6. A claim of actual innocence does not state an independent, substantive constitutional claim and is not a basis for federal habeas corpus relief. *See Herrera v. Collins*, 506 U.S. 390 (1993).

Claims of actual innocence are not cognizable on federal habeas review. *See United States v. Fields*, 761 F.3d 443, 479 (5th Cir. 2014) ("[Fifth Circuit] caselaw does not recognize freestanding actual innocence claims."). A claim of actual innocence may not be a basis for federal habeas corpus relief absent an independent federal constitutional violation. *See Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).

As explained above, Dean has not shown an independent federal constitutional violation, and so his actual innocence claim is not cognizable on federal habeas appeal.

## II.   Evidentiary Hearing

Finally, Dean requests an evidentiary hearing. *See* Dkt. No. 3 at 10. But "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same as to factual determinations under section 2254(d)(2)). Here, Dean only alleges non-defaulted claims under section 2254(d) that were adjudicated on the merits in state court. As such, he cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court and is not entitled to an evidentiary hearing.

**Recommendation**

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 4, 2019

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE